UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SALITA PROMOTIONS CORP.,

      Plaintiff,

v.

SHOHJAHON ERGASHEV and
OLEG BOGDANOV,

      Defendants.

Case No. 20-12547
Honorable Laurie J. Michelson

**OPINION AND ORDER GRANTING IN PART
EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER [2]**

Shohjahon Ergashev is a top-ranked boxer whose next bout is in three days, on September 21, 2020, in St. Petersburg, Russia. Salita Promotions Corporation is Ergashev's promoter. Salita says that until recently, it had no idea that Ergashev was going to fight on September 21. And, according to Salita, this is a problem because it has the exclusive right to arrange Ergashev's bouts. And Salita has arranged for Ergashev to fight on November 17, 2020, and have that fight broadcast on NBC Sports. Because of the potential for the September 21 bout to adversely affect the November 17 bout, and for other reasons, Salita asks this Court to stop Ergashev from stepping into the ring on September 21. In refereeing this fight, the Court finds that Salita is likely to show that Ergashev breached the parties' agreement and that Salita will be irreparably injured if Ergashev boxes on September 21. So the Court will grant in part Salita's request for an ex parte temporary restraining order.

**I.**

Because Salita has sought ex parte relief, the Court has only one side of the story. Here is that story, according to Salita's verified complaint.

In November 2017, Salita entered into an agreement with Ergashev to promote him. Under the agreement, Ergashev granted Salita "the sole and exclusive right to secure and arrange all bouts . . . requiring [Ergashev's] services." (ECF No. 1, PageID.18.) As the agreement was for five years, there are about two years left on the deal. (*Id.*)

Things went well for a time. Salita promoted Ergashev in eight fights; Ergashev won them all. (ECF No. 6, PageID.6.) Four of the eight fights were featured on "a popular boxing series broadcast on Showtime." (*Id.*) Before his agreement with Salita, Ergashev was unranked; now, depending on who you ask, he is number six, seven, or thirteen in the world in the junior welterweight division. (*Id.*; ECF No. 1, PageID.1) According to Salita, Ergashev has "gained national exposure in the United States . . . and is moving rapidly toward an opportunity to fight for the world title." (*Id.*)

But then, Salita says, it got hit with a low blow: the promotion company learned that Ergashev was slated to fight in a bout that it did not arrange. In particular, Salita said it learned from Instagram that Ergashev was set to fight on September 21, 2020 in St. Petersburg, Russia. Here is a promotional poster of that fight:



(ECF No. 2, PageID.36 (Ergashev is on the left).)

Not to be outmaneuvered, Salita fought back. On September 7 and September 8, Salita sent cease-and-desist letters to Ergashev and his manager, Oleg Bogdanov, who allegedly arranged the September 21 fight. In the letter to Ergashev, Salita indicated that it would consider fight opportunities that it did not arrange but that Ergashev needed to present those opportunities for its approval. (ECF No. 2, PageID.50.) In the case of the September 21 fight, it did "not consent to such bout." (*Id.*) Salita demanded that Ergashev cease and desist his breach of their agreement. (*Id.*) In its letter to Bogdanov, Salita not only expressed displeasure about Bogdanov being involved in setting up the September 21 fight, but also that Bogdanov did the same thing with another Salita fighter. (ECF No. 2, PageID.51.) Salita demanded that Bogdanov cease and desist from any further interference with its contractual rights. (*Id.*)

Apparently, Salita never got a response to its September 7 and September 8 letters. And apparently the September 21 fight, now three days away, is still scheduled to go forward. So Salita brought the fight to federal court. And it seeks a first-round knockout. Specifically, Salita seeks an ex parte TRO and asks the Court to halt the September 21 fight.

## II.

Temporary restraining orders are not handed out readily. *See Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco, LLC*, 958 F.3d 532, 535 (6th Cir. 2020) ("Granting a preliminary injunction is an extraordinary remedy reserved only for cases where it is necessary to preserve the status quo until trial." (internal quotation marks omitted)). To obtain a temporary restraining order, Salita must show that it is "likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 535–36 (internal quotation marks omitted); *Ne. Ohio*

*Coal. for Homeless & Serv. Employees Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009

(6th Cir. 2006) (indicating that TRO and preliminary injunction factors are the same).

Further, because Salita seeks ex parte relief, it must satisfy two more requirements. The

promotion company must set out "specific facts in an affidavit or a verified complaint" that

"clearly show . . . immediate and irreparable injury, loss, or damage will result to [it] before the

adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). And Salita's counsel must

"certif[y] in writing any efforts made to give notice [to Ergashev and Bogdanov] and the reasons

why it should not be required." Fed. R. Civ. P. 65(b)(1)(B).

### III.

### A.

Even embracing Salita's account of the facts (which is all the Court has to go on right now),

one of the preliminary-injunction factors is still a close call: whether Salita will suffer immediate,

irreparable injury if this Court does not stop the September 21, 2020 fight.

Although its brief is not entirely clear, it appears Salita seeks to satisfy this preliminary-

injunction requirement in three ways. For one, it relies on cases finding that when a contract is for

"unique and extraordinary" services, the failure of the contracting party to provide those services

is irreparable harm. (*See* ECF No. 2, PageID.42 (citing *Marchio v. Letterlough*, 237 F. Supp. 2d

580, 586 (E.D. Pa. 2003)).) That makes sense, for if a contracting party's services are truly unique,

they, by definition, cannot be found elsewhere, and so the failure of the contracting party to provide

them is, in all likelihood, irreparable. *See Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 70 (2d Cir.

1999); Restatement (Second) of Contracts § 367 (1981). Salita says that Ergashev is "an athlete of

exceptional talent and skill and his services are unique and extraordinary to Salita Promotions."

(ECF No. 2, PageID.44.) For two, Salita relies on cases finding that reputational injury is

4

irreparable. (ECF No. 2, PageID.42–44.) That too makes sense, for a tarnished reputation is not readily restored, and, even if it is, the cost of restoration is hard to quantify. *See CFE Racing Prod., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 596 (6th Cir. 2015). For three, Salita says that when it promotes a fight, its name appears on all sorts of promotional material, and Dimitry Salita, the company's principal, is often interviewed before, during, and after the fights. (ECF No. 2, PageID.44–45.) So Salita argues, if Ergashev were to fight on September 21, it would lose self-promotion opportunities that are "not measurable in money damages." (*Id.* at PageID.45.)

Setting aside for the moment the possibility that Ergashev might be drained from, or injured in, or lose the September 21 fight, the Court is hard pressed to see how Salita's reputation would be damaged if that fight goes forward. Salita's reputation is based on promoting boxers and fights. So the September 21 fight would make Salita look bad if the fight is (1) poorly run and (2) those in the boxing community thought that Salita had run it. But aside from the fact that Ergashev is a Salita fighter, Salita has put forth no evidence that anyone in the boxing community would be confused in that way. Indeed, it appears that the fight is being promoted by Yuka Promotions. *See* Tapology, *Ergashev vs. Miliusha*, https://perma.cc/B4AN-RD39. Perhaps Salita thinks that if its fighters routinely take fights outside their agreement with Salita, it gives the impression to the boxing community that its fighters do not like the fights it arranges or that Salita fails to get enough action for its fighters. But one fighter's breach is not a pattern. So without more explanation from Salita, it is far from clear how the September 21 fight would hurt its reputation as a promoter.

That said, the Court does narrowly find that Salita has shown immediate, irreparable injury if the September 21 fight takes place.

Ergashev appears to be quite highly ranked, with two organizations placing him in the top 10 in his division. (ECF No. 1, PageID.6.) He has no losses on his record (*id.*), and so he has a

chance to become the top contender. Arguably then, his services to Salita—a top-ten fighter in the junior welterweight division—are unique and thus difficult to replace. *See Arias v. Solis*, 754 F. Supp. 290, 294 (E.D.N.Y. 1991) (finding boxer's services were "unique and extraordinary" where one organization ranked boxer tenth in his division, another seventh).

Of course, even if Ergashev fights on September 21, that does not mean that Salita will need to replace his services. In theory at least, Ergashev could fight on September 21 and still fulfil his duties to Salita by fighting in every fight Salita wants him to. So this situation is not exactly one where a contracting party with unique talent takes his services elsewhere.

But, with an additional fact and bit of foresight added to the mix, the situation gets close enough to that situation for present purposes. Salita has set up a fight for Ergashev on November 17, 2020. (ECF No. 1, PageID.7.) The fight will be aired on NBC Sports. (*Id.*) And while some do not think much of Ergashev's opponent on September 21, *see* Sports.uz, *Shohjahon Ergashev will face Dzmitry Miliusha for stay-busy fight in Russia*, https://perma.cc/YG8N-V2ES, the history of boxing is littered with big upsets (just ask James 'Buster' Douglas or Andy Ruiz, Jr.). Presumably the November 17 fight was set up based in part on Ergashev's current rankings and his undefeated record, so a loss might make the November 17 fight a no-go. Or, because it would blemish Ergashev's undefeated record, the November 17 fight might lose a lot of its luster. Also, boxing matches are often grueling, physical events that, at this level, do not occur less than 2 months apart. So even if Ergashev wins on September 21, his opponent could catch him with a blow that injures Ergashev. Or Ergashev could injure himself (say, by sustaining a boxer's fracture). Or he could just not be physically ready, especially where he will be traveling from Russia to the United States.

And if Ergashev loses or is injured on September 21, that would result in irreparable—or at least very hard to quantify—injury to Salita. Salita would presumably have to break its contract

6

with NBC Sports. *See Madison Square Garden Boxing, Inc. v. Shavers*, 434 F. Supp. 449, 452 (S.D.N.Y. 1977) (finding that if boxer fought for a different promoter, that first promoter's "credibility could be destroyed in the eyes of boxing managers, as well as various media representatives, such as television producers, or others, who, in reliance, enter into further contracts"). And Salita would lose the opportunity to engage in its usual self-promotion, which, the Court agrees would be challenging to measure in dollars. And Salita's reputation for setting up fights would take a hit, which could damage Salita's ability to make deals with, say, sports networks, as well as individual fighters. Presumably too, Ergashev's November 17 opponent, his opponent's manager, and his opponent's promotional company will not be pleased with Salita.

One other point favors a finding of irreparable harm. In signing his agreement with Salita, Ergashev acknowledged that his services were "special, unique, extraordinary, irreplaceable and of peculiar value, and that in the event of [his] breach or threatened breach of [his agreement with Salita], [Salita] would suffer irreparable damage." (ECF No. 1, PageID.20.) While this admission is by no means dispositive, *see Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1266 (10th Cir. 2004), it may be treated as evidence that supports a finding of irreparable harm, *see York Risk Servs. Grp., Inc. v. Couture*, 787 F. App'x 301, 308 (6th Cir. 2019).

In sum, the Court narrowly finds that absent an injunction, Salita will suffer irreparable harm.

**B.**

The other factors for preliminary relief can be addressed without extended discussion.

Start with likelihood of success on the merits. On the record before the Court, Ergashev is plainly in breach of the parties' agreement. The agreement expressly states that Salita has "the sole and exclusive right to secure and arrange all bouts . . . requiring [Ergashev's] services." (ECF No.

7

1, PageID.18.) Ergashev's September 21 bout was not arranged by Salita. So Salita's breach-of-contract claim packs plenty of punch.

As far as prejudice to Ergashev from being unable to fight on September 21, the record is devoid of how skipping that fight will cause him harm. It is probably safe to presume that Ergashev will lose his purse and that he may burn some bridges with the fight's promoters. But, perhaps, the fight in Russia can be rescheduled after November 17. Or, perhaps, the fight can still go forward if Ergashev negotiates for Salita's approval. Moreover, when he signed the contract, Ergashev agreed that Salita, and Salita alone, would be his promoter. So any prejudice to Ergashev from missing the September 21 bout is partly his own doing. Finally, the Court will mitigate prejudice to Ergashev by requiring Salita to post a $10,000 bond; that money will be used to offset damages to Ergashev if it turns out that he should have been allowed to fight on September 21.

Finally, in terms of the public's interest, it is not clear how it would benefit the public for Ergashev to breach his contract with Salita and, absent some showing of efficient breach or the like, there is a public interest in holding a contracting party to its promises. Further, the public probably has more of an interest in seeing Ergashev fight on November 21 than it does on September 21.

## C.

There are two loose ends to tie up.

As noted, to obtain ex parte relief, Salita's counsel must "certif[y] in writing any efforts made to give notice [to Ergashev and Bogdanov] and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B). Counsel says that on September 16 it emailed Ergashev and his manager a copy of the verified complaint and motion for temporary restraining order. (ECF No. 2, PageID.24.) And counsel says it attempted to call Ergashev and Bogdanov in Russia. (*Id.*) As far

as the reasons notice is not required before this order issues, the Court recognizes the difficulty of reaching Ergashev and Bogdanov in Russia and that the fight is only three days away.

The second loose end involves Ergashev's manager, Bogdanov. Salita wants the Court to enjoin Bogdanov too. (ECF No. 2, PageID.25.) But the Court has not mentioned Bogdanov in its analysis for two reasons. For one, the Court is not entirely convinced that it may, consistent with the Due Process Clause, exercise personal jurisdiction over Salita's claims against Bogdanov. Bogdanov lives in Russia. (ECF No. 1, PageID.3.) And while Ergashev consented to this forum when he signed his agreement with Salita (*id.* at PageID.21), it appears that Bogdanov did not sign the agreement (*see id.* at PageID.19). For two, the Court need only enjoin Ergashev to stop the September 21 fight, and that is the only thing in this case that requires the Court's attention today.

**IV.**

For the reasons given, the Court will GRANT IN PART Salita Promotions' motion for an ex parte temporary restraining order. Specifically, the Court ORDERS the following:

(1) Shohjahon Ergashev is restrained from participating in the September 21, 2020 bout at the Azimat Hotel in St. Petersburg, Russian Federation;

(2) Ergashev is restrained from destroying, erasing, or otherwise making unavailable, any documents or information in his possession or control which pertain in any way to Salita Promotions' claims in this action (including all digital information, whether that information is on computer storage, in an email or social-media account, or on a cell phone);

(3) Salita Promotions is to immediately post a $10,000 bond;

(4) Salita Promotions is to immediately use every reasonably available means (phone, email, social-media direct messaging) to give notice of this injunction to Ergashev and Bogdanov,

and shall continue, on a daily basis until this order expires, to attempt to provide Ergashev

and Bogdanov a copy of this order;

(5) all parties are to meet in a good-faith attempt to resolve this matter without further court

intervention; a report of that meeting shall be docketed by September 25, 2020;

(6) this temporary restraining order expires 14 days from entry without further order from the

Court.

SO ORDERED.

Dated: September 18, 2020


                                        s/Laurie J. Michelson
                                        LAURIE J. MICHELSON
                                        UNITED STATES DISTRICT JUDGE