UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| SALITA PROMOTIONS CORP., <br><br> Plaintiff, <br><br> v. <br><br> SHOHJAHON ERGASHEV and OLEG BOGDANOV, <br><br> Defendants. | Case No. 20-12547 <br> Honorable Laurie J. Michelson |

**OPINION AND ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION AGAINST DEFENDANT ERGASHEV [11]**

Shohjahon Ergashev is a top-ranked junior welterweight boxer. In 2017, he entered into an exclusive promotional agreement with Salita Promotions Corporation. For years, Ergashev and Salita Promotions worked well together. The company helped Ergashev rise through the boxing ranks and increase his renown in the United States and worldwide. But now, Ergashev refuses to allow Salita to promote his fights. For instance, Salita learned in September 2020 that Ergashev had agreed to participate in a bout in Russia in breach of his promotional agreement. The Court granted a temporary restraining order enjoining that fight from taking place on September 21, 2020. The September 21 bout was subsequently canceled, but Salita learned that it has been rescheduled for November 16, 2020 in Moscow. And just a few weeks ago, Ergashev's manager advised the International Boxing Federation that Salita is not authorized to negotiate a mandatory contender bout for Ergashev. So now the gloves are really off. Salita asks the Court to issue a preliminary injunction enjoining Ergashev from further violating the promotional agreement. In refereeing the second round of this legal fight, the Court finds that Salita is likely to show that Ergashev is in breach of the parties' agreement and that Salita will be irreparably injured if

Ergashev continues to violate the agreement and schedule bouts without Salita's involvement and approval. So the Court will grant Salita's request for a preliminary injunction.

**I.**

Because Ergashev has failed to appear to contest the motion, the Court still only has Salita's side of the story.

In November 2017, Salita entered into an agreement with Ergashev to promote him. Under the agreement, Ergashev granted Salita "the sole and exclusive right to secure and arrange all bouts . . . requiring [Ergashev's] services." (ECF No. 1, PageID.18.) As the agreement was for five years, there are about two years left on the deal. (*Id.*)

Things went well for a time. Salita promoted Ergashev in eight fights; Ergashev won them all. (ECF No. 6, PageID.6.) Four of the eight fights were featured on "a popular boxing series broadcast on Showtime." (*Id.*) Before his agreement with Salita, Ergashev was unranked; now, depending on who you ask, he is number four, seven, ten, or thirteen in the world in the junior welterweight division. (*Id.*; ECF No. 1, PageID.1) According to Salita, Ergashev has "gained national exposure in the United States . . . and is moving rapidly toward an opportunity to fight for the world title." (*Id.*)

But then, Salita learned that Ergashev was slated to fight in a bout that it did not arrange. In particular, Salita said it learned from Instagram that Ergashev was set to fight on September 21, 2020 in St. Petersburg, Russia. (ECF No. 2, PageID.36.)

Salita sent cease-and-desist letters to Ergashev and his manager, Oleg Bogdanov, who allegedly arranged the September 21 fight. In the letter to Ergashev, Salita indicated that it would consider fight opportunities that it did not arrange but that Ergashev needed to present those opportunities for its approval. (ECF No. 2, PageID.50.) In the case of the September 21 fight, it

did "not consent to such bout." (*Id.*) Salita demanded that Ergashev cease and desist his breach of their agreement. (*Id.*) In its letter to Bogdanov, Salita not only expressed displeasure about Bogdanov being involved in setting up the September 21 fight, but also that Bogdanov did the same thing with another Salita fighter. (ECF No. 2, PageID.51.) Salita demanded that Bogdanov cease and desist from any further interference with its contractual rights. (*Id.*)

Salita never got a response to its letters and so it came to this Court to ask for an ex parte temporary restraining order to stop the September 21 fight. (ECF No. 2.) The Court found that Salita satisfied the requirements for an ex parte TRO and issued an order enjoining Ergashev from participating in the September 21 bout. (ECF No. 8.)

It seems that Ergashev got notice of the Court's TRO and declined to participate in the September 21 bout. (ECF No. 11, PageID.99.) *See also* Scott Shaffer, *Salita Promotions in legal battle with Shohjahon Ergashev*, Boxing Talk (Sept. 24, 2020), https://perma.cc/JJ9X-JP9S. Ergashev even posted about this lawsuit and the TRO on his Instagram account. (ECF No. 11, PageID.100.)

But Ergashev has still not responded to repeated requests from Salita to discuss and attempt to resolve this matter. (*Id.* at PageID.99–100.) Salita has attempted to contact Ergashev via phone, email, and Whatsapp message. (ECF No. 10; ECF No. 11, PageID.94–95.)

Ergashev has also failed to respond to Salita's offers of bout opportunities. Ergashev had previously agreed to participate in a bout to be televised during an NBC Sports boxing event on November 19, 2020. (ECF No. 11, PageID.101.) But Salita has been unable to finalize that bout agreement because of Ergashev's failure to respond. (*Id.*) Salita also offered Ergashev the opportunity to fight in a 10-round bout on December 12, 2020 on Showtime with a $50,000 purse. (*Id.*) But Ergashev failed to respond to this offer too. (*Id.*)

Recently, Ergashev began posting on Instagram about his participation in an upcoming bout on November 16, 2020 in Moscow, Russia that Salita did not arrange or approve. (*Id.* at PageID.101–102.) This event is apparently the rescheduled September 21 bout against Dzmitry Miliusha. *See Ergashev to return to the ring in November!*, Asian Boxing (Oct. 29, 2020), https://perma.cc/77P5-A3K7. Ergashev continues to post about the November 16 bout and it appears that it is still scheduled to go forward.

Meanwhile, on October 27, 2020, Salita received a letter from the International Boxing Federation (IBF) offering Ergashev the opportunity to participate in a junior welterweight eliminator division bout. (ECF No. 11-3.) This eliminator bout will determine the mandatory challenger for the junior welterweight champion title. Salita immediately notified Ergashev's manager Bogdanov of the opportunity via email. Bogdanov replied to Salita, copying IBF representatives on the email, writing that Ergashev would accept the bout, but that "all further negotiations regarding the fight will be conducted by Adam Morallee and me. Dmitry Salita is not authorized to conduct any negotiations with anyone regarding the organization of [Ergashev's] fights." (ECF No. 11-4.) Despite this apparent repudiation, Salita remains in discussions with the IBF to schedule this bout.

Salita Promotions now asks the Court to issue a preliminary injunction pending trial enjoining Ergashev from violating the terms of the promotional agreement, participating in any bouts that fall outside of the agreement, or signing any promotional agreement or bout agreements with other promoters without the consent of Salita Promotions. (ECF No. 11.)

The Court held a hearing on the motion via Zoom on November 13, 2020. Both Salita and the Court provided notice of the hearing to Ergashev via email. Salita also personally served notice of the motion and hearing on Ergashev at his gym in Moscow on November 10, 2020. (ECF No.

15.) Ergashev failed to file a response to the motion and neither he nor his representative appeared at the hearing. Counsel for Salita notified the Court that they had been in touch with Ergashev's attorney, Adam Morallee, about the hearing, but that Morallee reported he did not plan to appear. At the hearing, the Court heard testimony from Dimitry Salita and David Berlin, counsel for Salita Promotions.

## II.

A "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco, LLC*, 958 F.3d 532, 539 (6th Cir. 2020) (internal quotation marks omitted). The Court may issue a preliminary injunction only on notice to the adverse party. Fed. R. Civ. P. 65.

In granting preliminary injunctive relief, the Court must consider and balance four factors: (1) Salita Promotions' likelihood of success on the merits, (2) whether Salita Promotions will suffer irreparable injury without an injunction, (3) whether granting the injunction will cause substantial harm to others, and (4) whether the public interest would be served by the injunction. *See S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017).

## III.

### A.

The Court must first address the threshold question of whether Ergashev has notice of this motion. The notice required by Rule 65 is not equivalent to formal service of process. But "[t]he notice required by Rule 65(a) . . . implies a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition." *Hunter v. Hamilton Cty.*

*Bd. of Elections*, 635 F.3d 219, 246 (6th Cir. 2011) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 432 n. 7 (1974)).

Although Ergashev has not yet been formally served with the summons and complaint[1] in this case, he clearly had notice of the suit, this motion, and the November 13 hearing. Salita and its counsel have made numerous attempts to contact Ergashev and Bogdanov via email, phone, and Whatsapp messages. Although neither defendant has acknowledged the messages about this suit, Bogdanov has replied from the same email address to emails about scheduling bouts. (*See* ECF No. 11-4.) The Court also sent notice of the hearing to two email addresses associated with Ergashev found in the documents filed by Salita. One of the email addresses bounced back, but the other did not. The Court also finds that Ergashev clearly had notice of the Court's TRO since he posted about it on Instagram. Additionally, Salita's counsel stated they had communicated with Ergashev's lawyer in London, who acknowledged the suit and the hearing, but declined to appear on Ergashev's behalf. And a process server personally delivered a copy of the preliminary injunction motion to Ergashev in Russia. (ECF No. 15.) It is clear that Ergashev has actual notice of the motion and was given ample opportunity to oppose it.

Given the difficulty of formal service in Russia and the time-sensitive nature of the requested relief, the Court finds that Ergashev has received sufficient notice of this motion for purposes of Rule 65.

---

[1] Ergashev currently lives in Russia so service cannot be completed by ordinary means. Salita's counsel stated that they have begun the process of formal service through a Russian process server.

**B.**

Turning to the four preliminary injunction factors, the Court begins with the most complicated factor: irreparable harm. A plaintiff's harm is irreparable if it is not fully compensable by money damages. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). The harm is considered not fully compensable if the loss would make damages difficult to calculate. *Id.*

In its TRO, the Court found that Salita had narrowly demonstrated immediate, irreparable injury if the September 21 fight took place principally because a loss or injury during that fight could negatively impact Salita's planned November bout on NBC Sports. (ECF No. 8, PageID.83–84.)

Although the November NBC Sports bout is no longer happening, the same argument applies to Ergashev's planned participation in the IBF eliminator bout. It is not clear that Salita and Ergashev are on the same page about the IBF bout, but Dmitry Salita, the President and CEO of Salita Promotions, is confident that Ergashev will participate in the bout and that with the injunction, it will be promoted by his company.

During the November 13 hearing, Mr. Salita and Mr. Berlin both explained how important the IBF bout is to Ergashev's career and Salita's business. The opportunity to compete in a mandatory eliminator bout is a key milestone that a young boxer works towards. If Ergashev wins the eliminator bout, the current world champion for the junior welterweight division would be required to fight and beat Ergashev to maintain his title. And apparently a number of boxing experts believe Ergashev could win and become the next champion. If Salita gets to promote Ergashev in the eliminator bout, it will not only be a great opportunity for profit and self-promotion, Salita will also have the opportunity to fill additional (undercard) slots at the event with other boxers it represents. And of course, if Ergashev wins the eliminator bout, he will have

the opportunity to become the next world champion in his division. This would greatly enhance the professional success and notoriety of both Ergashev and Salita Promotions. Indeed, Berlin testified that being able to secure this type of fight is how a small promoter becomes big, how it secures its reputation, and how it attracts other boxers to its team.

But Ergashev's unauthorized November 16 bout could put all of this at risk. As the Court explained in its prior opinion and heard during the preliminary injunction hearing, Ergashev could lose the November 16 fight, or he could injure himself, or he could be physically unprepared or disadvantaged for the next closely scheduled bout. At the hearing, Salita and Berlin explained that either a loss or an injury would destroy Ergashev's opportunity to compete in the IBF eliminator bout. Of course, an injury would make Ergashev physically unable to fight. But losing the fight would also be devastating because it would tarnish Ergashev's perfect record and he would drop in the rankings. And if Ergashev is unable to participate in the IBF eliminator bout, Salita would lose a lucrative deal and an important opportunity to promote the company and its other clients. Of course, either a loss or an injury would not only foreclose the IBF bout, it would also greatly harm Salita's opportunity to promote Ergashev in other future fights.

Salita also argues it will suffer irreparable reputational harm if Ergashev is not enjoined from breaching his exclusive promotional arrangement and participating in unauthorized bouts. In its previous opinion, the Court did not find this argument convincing. But additional facts lead the Court to the opposite conclusion here. Mr. Salita testified that the boxing world knows that Salita Promotions is Ergashev's exclusive promoter. As just one example, the letter from the IBF about the mandatory eliminator bout expressly identifies Salita Promotions as the entity that represents Ergashev. (ECF No. 11-3, PageID.113.) If Ergashev works with other promotors or continues to publicly repudiate Salita, it will hurt the company's reputation among TV networks, the official

8

ranking bodies, and other fighters who might be interested in signing with Salita. *See N. Atl. Operating Co., Inc. v. Babenko*, No. 15-14013, 2015 WL 13542566, at *3 (E.D. Mich. Nov. 19, 2015) ("A finding of irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears." (quoting *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 608 (6th Cir. 1991) (citations omitted))).

Salita's argument that it will be irreparably harmed absent a preliminary injunction is also supported by the fact that Ergashev's services are unique and extraordinary to Salita. In its prior opinion, the Court stated, "Arguably then, [Ergashev's] services to Salita—a top-ten fighter in the junior welterweight division—are unique and thus difficult to replace. *See Arias v. Solis*, 754 F. Supp. 290, 294 (E.D.N.Y. 1991) (finding boxer's services were "unique and extraordinary" where one organization ranked boxer tenth in his division, another seventh)." (ECF No. 8, PageID.83.)

The testimony provided during the hearing further strengthens this conclusion. Mr. Salita detailed the company's significant efforts and investment over the past three years to transform Ergashev from a relative unknown to a top-ranked boxer with name recognition in the United States. Prior to his agreement with Salita, Ergashev had only fought in Russia and was unranked. After they signed the promotional agreement, Salita arranged for Ergashev to come to the United States to work with a well-known trainer in Detroit and to participate in bouts televised on Showtime and HBO. Salita arranged and paid for Ergashev's visa, travel, lodging, meals, training, and all other expenses related to his training in the U.S. Salita not only used its connections to arrange bouts for Ergashev, he also used his expertise to create a "brand" for Ergashev, to increase his name-recognition in the U.S., and lobbied the ranking bodies to ensure Ergashev was highly ranked. It seems clear that Ergashev's current position and opportunities are in large part thanks to the efforts of Salita.

Ergashev's unique talent and skills, combined with the immeasurable work Salita has put in to making Ergashev a highly-ranked and well-known boxer, make Ergashev's services unique and extraordinary to Salita and not fully compensable by money damages. *See Marchio v. Letterlough*, 237 F. Supp. 2d 580, 589 (E.D. Pa. 2003) (find that the services of a nationally ranked and reputable professional boxer were unique and extraordinary).

And the Court does not only have to rely on Salita's position. In signing his promotional agreement with Salita, Ergashev too acknowledged that his services were "special, unique, extraordinary, irreplaceable and of peculiar value, and that in the event of [his] breach or threatened breach of [his agreement with Salita], [Salita] would suffer irreparable damage." (ECF No. 1, PageID.20.) Although this language is not dispositive, it is persuasive, particularly in combination with the other facts discussed above. *See York Risk Servs. Grp., Inc. v. Couture*, 787 F. App'x 301, 308 (6th Cir. 2019).

Finally, the Court notes that even if Salita's damages could be calculated, the evidence before the Court suggests the such damages might not be recoverable. Ergashev currently lives in Russia and it is unclear if he has any assets in the United States. And Ergashev might not be financially able to satisfy a large damages award. This gives further support to the conclusion that the loss created by Ergashev's repudiation of his exclusive promotional agreement would be irreparable. *See, e.g.*, *Canon Inc. v. GCC Int'l Ltd.*, 450 F. Supp. 2d 243, 256 (S.D.N.Y. 2006) ("Assuming that the losses to Canon could be readily calculated and reduced to a money judgment, I conclude that money damages would not be an adequate remedy in this case because of the nature and location of defendants' business. Defendants' operations are far-flung, and locating and attaching assets sufficient to satisfy a money judgment would be exceedingly difficult."), *aff'd*, 263 F. App'x 57 (Fed. Cir. 2008); 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice*

*and Procedure* § 2948.1 (3d ed. 2020) ("Even if a loss is fully compensable by an award of money damages, however, extraordinary circumstances, such as a risk that the defendant will become insolvent before a judgment can be collected, may give rise to the irreparable harm necessary for a preliminary injunction.").

The Court finds that the multiple possible sources of irreparable harm in this case weigh in Salita's favor.

**C.**

As in the Court's previous opinion, the other factors for a preliminary injunction can be addressed without extended discussion.

Likelihood of success on the merits is easy for Salita to satisfy. On the record before the Court, Ergashev is plainly in breach of the parties' agreement. The agreement expressly states that Salita has "the sole and exclusive right to secure and arrange all bouts . . . requiring [Ergashev's] services." (ECF No. 1, PageID.18.) Salita did not arrange or give permission for Ergashev to participate in either the September 21 or November 16 bouts. And Ergashev (via his manager Bogdanov) seems to have directly repudiated his promotional agreement by emailing the IBF that Salita is not authorized to negotiate the bout for Ergashev. So Salita has a very high likelihood of success of the merits of its claims against Ergashev.

The Court finds that a preliminary injunction would not cause substantial harm to others. It is likely that Ergashev will lose his purse and may burn some bridges with the promotors of the November 16 fight if he does not participate. But when Ergashev signed the promotional agreement, he agreed that Salita alone would be his promotor. And Salita has offered Ergashev several other bout opportunities that are likely more prestigious and lucrative than the Moscow fight. So any prejudice to Ergashev from missing the November 16 bout, or any other bout he

wishes to schedule without Salita's agreement, is largely his own doing. The Court has also already ordered Salita to post a $10,000 bond, which will be used to offset damages to Ergashev if he ends up being successful in this suit.

Finally, in terms of the public's interest, it is not clear how it would benefit the public for Ergashev to breach his contract with Salita and, absent some showing of efficient breach or the like, there is a public interest in holding a contracting party to its promises. Although some boxing fans may be disappointed if Ergashev does not fight on November 16, the public probably has more of an interest in seeing Ergashev fight in the more prestigious bouts arranged by Salita, such as the IBF eliminator bout.

## IV.

For the reasons given, the Court will GRANT Salita Promotions' motion for a preliminary injunction against Ergashev (ECF No. 11). Specifically, the Court ORDERS the following:

(1) Shohjahon Ergashev is restrained from participating in the November 16, 2020 bout at the Vegas City Hall in Moscow, Russian Federation;

(2) Ergashev is restrained from directly or indirectly, whether alone or in concert with others, violating the terms of the Promotional Agreement. Ergashev is thus restrained from participating in any bouts that fall outside the Promotional Agreement or signing any bout agreements without the written consent of Plaintiff Salita Promotions, Inc., or from signing any promotional agreements with other promoters;

(3) Ergashev is restrained from destroying, erasing, or otherwise making unavailable, any documents or information in his possession or control which pertain in any way to Salita Promotions' claims in this action (including all digital information, whether that

information is on computer storage, in an email or social media account, or on a cell phone);

(4) this preliminary injunction will remain in place until trial or further order of the Court.

SO ORDERED.

Dated: November 15, 2020

s/Laurie J. Michelson  
LAURIE J. MICHELSON  
UNITED STATES DISTRICT JUDGE
