UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SALITA PROMOTIONS CORP.,

     Plaintiff,

v.

SHOHJAHON ERGASHEV and
OLEG BOGDANOV,

     Defendants.

Case No. 20-12547
Honorable Laurie J. Michelson

---

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [30]

---

Shohjahon Ergashev is a top-ranked junior welterweight boxer from Uzbekistan. In 2017, he entered into an exclusive promotional agreement with Salita Promotions Corporation. For years, Ergashev and Salita Promotions apparently worked well together. But the relationship recently began to fall apart, and Salita Promotions found out that Ergashev was planning to participate in a bout in Russia in September 2020 in breach of his promotional agreement. So Salita Promotions sued Ergashev and his manager Oleg Bogdanov in this Court. The Court granted a temporary restraining order enjoining Ergashev from participating in the bout on September 21, 2020.

The September bout was canceled, but Salita Promotions then learned the fight had been rescheduled for November 16, 2020 and filed a motion to enjoin Ergashev from further violating the promotional agreement during the pendency of this suit. Despite many attempts to notify Ergashev of the motion, he failed to appear,

and the Court granted the preliminary injunction ex parte on November 15, 2020. Even so, Ergashev fought in the bout in Russia the next day.

In February 2021, Ergashev and Bogdanov finally appeared in this case and filed a motion to dismiss. Defendants argue that the Court lacks subject-matter and personal jurisdiction, and that the complaint fails to state a claim. For the reasons that follow, the motion is granted in part and denied in part. Bogdanov and the claims against him are dismissed without prejudice to refiling. The accounting claim is also dismissed, but the remaining claims against Ergashev survive.

## I. Facts

Salita Promotions is a boxing promotion company based in New York and Michigan. After the president of the company, Dmitriy Salita, discovered Ergashev in 2017, Mr. Salita began corresponding with Bogdanov, Ergashev's manager. (ECF No. 35-2, PageID.376.) Bogdanov expressed to Mr. Salita that in exchange for negotiating a promotional agreement ("the Agreement") for Ergashev, Salita Promotions would have to fund Ergashev's fights in Russia where he was living at the time and apply for a U.S. visa so Ergashev could train in the United States. (*Id.*) Salita Promotions agreed to those conditions and worked with Bogdanov to negotiate the terms of the agreement. (*Id.*)

After the agreement was finalized but not yet signed, Salita Promotions began facilitating the process of obtaining a visa for Ergashev and rented an apartment in Oak Park, Michigan for Ergashev to live in while he trained. (*Id.* PageID.377.) Salita Promotions also arranged for Ergashev to train at the Kronk Gym in Detroit. (*Id.*)

After receiving his visa, Ergashev flew to Detroit, paid for by Salita Promotions. (*Id.*) Ergashev lived in the Oak Park apartment for six weeks prior to his first fight in the United States on November 11, 2017. (*Id.*)

On November 17, 2017, Salita Promotions and Ergashev executed the Promotional Agreement. (*Id.*; ECF No. 35-3.) Under the agreement, Ergashev granted Salita "the sole and exclusive right to secure and arrange all bouts . . . requiring [Ergashev's] services" for a five-year term. (ECF No. 35-3, PageID.387.) The Agreement also contains a forum selection clause which provides that Ergashev submits to the jurisdiction of the Eastern District of Michigan, that any action related the Agreement will be brought in the District, and that Ergashev waives any objection to venue in Michigan. (ECF 35-3, PageID.390.)

Things went well for a time. After the execution of the agreement, Ergashev apparently returned to Michigan on multiple occasions for bouts and to train at Kronk Gym. (ECF No. 35-2, PageID.377.) During these trips, Ergashev stayed at Salita Promotions' property in Oak Park, Michigan. (*Id.*) But the exact dates and duration of Ergashev's trips to Michigan are not clear.

According to Salita Promotions, the company promoted Ergashev in eight fights; Ergashev won them all. (ECF No. 6, PageID.6.) Four of the eight fights were featured on "a popular boxing series broadcast on Showtime." (*Id.*) Before his agreement with Salita Promotions, Ergashev was unranked; now, depending on who you ask, Ergashev is ranked as one of the best in his weight class in the world. (*Id.*; ECF No. 30, PageID.249.)

3

But recently, Salita Promotions learned that Ergashev was slated to fight in a bout in Russia that it did not arrange. (ECF No. 2, PageID.36.) After receiving no response to its cease-and-desist letters, Salita Promotions sued Ergashev and Bogdanov, who allegedly arranged the September 21 fight. Salita Promotions asked the Court for an ex parte temporary restraining order to stop the September 21 fight. (ECF No. 2.) The Court found that Salita Promotions satisfied the requirements for an ex parte TRO and issued an order enjoining Ergashev from participating in the September 21 bout. (ECF No. 8.) Ergashev ultimately did not fight.

Although Ergashev posted about this lawsuit and the TRO on his Instagram account (ECF No. 11, PageID.100), he did not appear in the suit and continued to ignore repeated requests from Salita Promotions to discuss and attempt to resolve the matter. (ECF No. 11 PageID.99–100.)

In early November 2020, Ergashev began posting on social media about an upcoming fight against Dzmitry Miliusa set for November 16 that Salita Promotions did not arrange or approve. (*Id.* at PageID.101–102.) So Salita Promotions filed a motion for a preliminary injunction. (ECF No. 11.) Although the Court and Salita Promotions provided notice of the hearing on the motion to Ergashev via email and Salita Promotions effectuated personal service of the notice of the motion and hearing on Ergashev at his gym in Moscow, Ergashev failed to appear at the hearing. *See Salita Promotions Corp. v. Ergashev*, 500 F. Supp. 3d 648, 651–52 (E.D. Mich. 2020). On November 15, 2020, the Court granted Salita Promotions' motion for a preliminary injunction and enjoined Ergashev from participating in the November 16

4

fight or otherwise violating the terms of his exclusive promotional agreement. *Id.* at 655–56. Yet Ergashev still participated in the November 16 bout. *See, e.g.*, Scott Shaffer, *Ergashev Gets Win in Violation of Court Order*, Boxing Talk (Nov. 17, 2020), https://perma.cc/8DM8-J35P.

Although Salita Promotions had given Defendants repeated notice of all of the proceedings in the case, Salita had up to that point been unable to effectuate official service of process since both Ergashev and Bogdanov were living in Russia. So Salita Promotions requested, and the Court granted, alternative service. (ECF Nos. 19, 20.) As ordered, Salita Promotions sent the defendants copies of the translated summons and complaint via email, Whatsapp message, and personal service in Russia. (ECF Nos. 21, 22, 24.) An attorney for both defendants soon filed an appearance (ECF No. 27) and a motion to dismiss (ECF No. 30). The motion to dismiss argues that the Court lacks subject-matter and personal jurisdiction over the claims and that the complaint fails to state a claim. (*Id.*) The motion is fully briefed and can be decided without the need for further argument. *See* E.D. Mich. LR 7.1(f).

## II. Legal Standard

When deciding a motion to dismiss, the Court "construes the complaint in the light most favorable to the plaintiff, accepts the plaintiff's factual allegations as true, and determines whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (cleaned up). At this stage, the Court "may consider the Complaint and any exhibits attached thereto,

public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

## III. Analysis

Defendants seek to dismiss Salita Promotions' lawsuit on three bases: lack of subject-matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief can be granted.

## A. Subject-Matter Jurisdiction

The Court begins with Defendants' challenge to the Court's subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Federal district courts have jurisdiction over civil actions where the matter in controversy exceeds the sum of $75,000 and is between citizens of two different U.S. states or between citizens of a U.S. state and citizens or subjects of a foreign state. *See* 28 U.S.C. § 1332(a). Salita Promotions bears the burden of establishing subject-matter jurisdiction. *S. Rehab. Grp., P.L.L.C. v. Sec'y of Health & Hum. Servs.*, 732 F.3d 670, 680 (6th Cir. 2013) (internal citations omitted). Salita Promotions' amended complaint states that Ergashev is a resident of Moscow, Russia and Bogdanov is a resident of St. Petersburg, Russia. (ECF No. 23 PageID.204–205.)

Defendants argue that Salita Promotions has failed to establish diversity jurisdiction because it pleads the residency—not the citizenship—of Defendants. (ECF No. 30, PageID.251.)

True, "[s]tate citizenship for the purpose of the diversity requirement is equated with domicile." *Von Dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir. 1990) (internal citation omitted). And under federal law, the concept of domicile is different from residency in that domicile is determined by residence in a state plus the intention to remain there. *Id.* (citing *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 47 (1989); 13 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3612).

But even though Defendants are correct about the distinction between residency and citizenship under § 1332, that distinction does not warrant dismissal. Salita Promotions' response makes clear that it intended to use "resident" as a synonym of "citizen" and that Ergashev and Bogdanov are, in fact, citizens of foreign states. (ECF No. 35, PageID.351–352.) At its core, the concept of diversity of citizenship means simply that "no party [can] share citizenship with any opposing party." *Safeco Ins. Co. of Am. v. City of White House*, 36 F.3d 540, 545 (6th Cir. 1994). Here there is no suggestion that the defendants share citizenship with Salita Promotions, and the Court is persuaded that Salita Promotions' use of "resident" instead of "citizen" was simply a drafting error. So the Court holds that it has subject-matter jurisdiction over the claims but will allow Salita Promotions to make a technical amendment to its complaint to use the proper terminology to allege the foreign citizenship of Ergashev and Bogdanov.

### B. Personal Jurisdiction

Next the Court will address Defendants' argument that the Court cannot exercise personal jurisdiction over the claims asserted against them and thus the case should be dismissed under Rule 12(b)(2). Salita Promotions bears the burden of demonstrating personal jurisdiction over Defendants. *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 548 (6th Cir. 2016). But "[w]hen the district court resolves a Rule 12(b)(2) motion solely on written submissions, the plaintiff's burden is 'relatively slight,' and 'the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal[.]'" *Id.* at 548–49 (quoting *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007)). And the facts must be viewed in the light most favorable to Salita Promotions. *Id.* at 549.

A court may have either general or limited personal jurisdiction over a defendant. General jurisdiction extends to any and all claims brought against a defendant. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). "Those claims need not relate to the forum State or the defendant's activity there; they may concern events and conduct anywhere in the world. But that breadth imposes a correlative limit: Only a select 'set of affiliations with a forum will expose a defendant to such sweeping jurisdiction.'" *Id.* (internal citations and quotation marks omitted). On the other hand, specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Id.*

But under either type of personal jurisdiction, in a diversity case such as this, Salita Promotions must demonstrate that both due process and Michigan's long-arm

statute are satisfied in order to exercise personal jurisdiction over Defendants. *Schneider v. Hardesty*, 669 F.3d 693, 699 (6th Cir. 2012); Mich. Comp. Laws § 600.701 *et seq.*

### 1. Ergashev

Salita Promotions argues that the Court has general jurisdiction over Ergashev because he consented to such jurisdiction when he signed the promotional agreement.

Although the question of enforceability of a forum selection clause is generally governed by federal law, *see Wong v. PartyGaming, Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009), "[w]hen a federal court sitting in diversity exercises personal jurisdiction over a party pursuant to a forum-selection clause, state law controls the question of whether that clause is enforceable." *Stone Surgical, LLC v. Stryker Corp.*, 858 F.3d 383, 388 (6th Cir. 2017); *see also Preferred Capital, Inc. v. Sarasota Kennel Club, Inc.*, 489 F.3d 303, 306 (6th Cir. 2007); *Wong*, 589 F.3d at 828 n.6 ("This holding does not offend our decision in *Preferred Capital*.").

General personal jurisdiction over individuals is governed by Michigan Compiled Laws § 600.701. That statute, in relevant part, provides that personal jurisdiction exists via the defendant's "[c]onsent, to the extent authorized by the consent and subject to the limitations provided in section 745." *Id.*; Mich. Comp. Laws § 600.745(2). In turn, section 745 requires that (a) the court has power under state law to hear the action, (b) the state is a "reasonably convenient place" to conduct a trial, (c) the forum selection clause was not "obtained by misrepresentation, duress,

the abuse of economic power, or other unconscionable means," and (d) the defendant was served with process under court rules. *See* Mich. Comp. Laws § 600.745(2).

There is no dispute that Ergashev signed the Agreement containing the Michigan forum selection clause. But Defendants argue that Salita Promotions has not satisfied the first two requirements under § 600.745(2). As for the first, the Court has already determined that it has subject-matter jurisdiction over the case. As for the second, Defendants argue that Michigan is not a reasonably convenient place for this case since Salita Promotions is headquartered in New York and they live in Russia. (ECF No. 30, PageID.255.)

Under Michigan law, a court may be reasonably convenient regardless of the defendant's out-of-state residency and limited contacts with the forum. *See Umlaut, Inc. v. P3 USA, Inc.*, No. 19-13310, 2020 WL 4016098, at *3 (E.D. Mich. Jul. 15, 2020); *see also FCA US LLC v. Bullock*, 2018 WL 1875597, at *3 (E.D. Mich. Apr. 19, 2018) (holding that Michigan was a reasonably convenient place to try a case involving a California defendant who allegedly violated a confidentiality agreement with a Michigan plaintiff even though she had no contacts with the forum).

In this case, Ergashev has a longstanding relationship with Michigan. The majority of Ergashev's contacts and interactions with Salita Promotions have been in Michigan. Salita Promotions paid for Ergashev to come to Michigan to train and fight on multiple occasions. (ECF No. 35-2, PageID.377.) For a time, Ergashev lived in an apartment in Oak Park paid for by Salita Promotions and even listed the Oak Park address on his boxing license applications. (*Id.* at PageID.377–378.) And Ergashev

knowingly signed the Agreement with the Michigan forum selection clause. So Michigan is clearly not completely foreign or inaccessible for Ergashev. Although Salita Promotions has its principal place of business in New York, it also has an office in West Bloomfield, Michigan. (ECF No. 35-3, PageID.388.) Since Salita Promotions chose Michigan as the preferred forum in its forum selection clause, it clearly believes that Michigan is a reasonably convenient place to try the case. The Court agrees.

In the case of a forum selection clause determined to be enforceable under state law, the Court need not conduct a traditional due-process analysis. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589 (1991) ("Because we find the forum-selection clause to be dispositive of this question, we need not consider petitioner's constitutional argument as to personal jurisdiction."). Federal law favors enforcing a forum selection clause "unless the party seeking to void it can 'clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Nizam's Inst. of Med. Scis. v. Exch. Techs., Inc.*, 28 F.3d 1210, *3 (4th Cir. 1994) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)); *see also Burger King v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) ("Where such forum-selection provisions have been obtained through freely negotiated agreements and are not unreasonable and unjust, their enforcement does not offend due process." (internal citation and quotation marks omitted)). Here, Defendants do not allege that the forum selection clause is invalid and have not made a showing that enforcement of the clause would be unreasonable or unjust.

So the Court has general personal jurisdiction over Salita Promotions' claims against Ergashev.

## 2. Bogdanov

The question of whether the Court has personal jurisdiction over the claims against Bogdanov is more complicated.

Salita Promotions argues that the Court also has general jurisdiction over Bogdanov via the forum selection clause—even though he did not sign the Agreement—because "his role and conduct are so closely related to the contractual relationship that he should be subject to [the clause]." (ECF No. 35, PageID.354.) Presumably, Salita Promotions is referring to its allegations that Bogdanov played a central role in the negotiation of the Agreement. (*See* ECF No. 35-2, PageID.476.)

Salita Promotions' legal authority for its argument is not persuasive on the facts of this case. The only cited opinion is by a district court in Virginia. *See Allianz Insurance Co of Canada v. Cho Yang Shipping Co.*, 131 F. Supp. 2d 787, 791 (E.D. Va. 2000). It is true that *Allianz Insurance* cites to caselaw from the Seventh and Ninth Circuits to support the general proposition that "non-parties may be bound to a forum selection clause, if the non-party is so closely related to the dispute such that it becomes foreseeable that it will be bound." *Id.* (quoting *Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)) (other internal citations and quotation marks omitted). But *Allianz Insurance* and the cases it cites relate to disputes over bills of lading and common carriers. Salita Promotions has provided no further caselaw or argument to convince the Court that this concept should be applied to bind

a boxing manager via an agreement signed by his client. So Salita Promotions has not met its burden to establish that the Court has general jurisdiction over Bogdanov.

In the absence of general jurisdiction, the Court must next consider whether it has the authority to exercise specific jurisdiction over Bogdanov. To succeed via this route, Salita Promotions must show that both due process and Michigan's long-arm statute are satisfied. *Schneider v. Hardesty*, 669 F.3d 693, 699 (6th Cir. 2012); Mich. Comp. Laws § 600.701 *et seq.*

The first step of the Michigan long-arm analysis requires determining whether a relationship sufficient to permit jurisdiction exists. *See* Mich. Comp. Laws § 600.705. In relevant part, the statute provides that a sufficient relationship is created by (1) "the transaction of any business within the state," or (2) "the doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort." *Id.* at § 600.705(1)–(2).

Bogdanov's conduct in Michigan fits both of these categories. In *Lanier v. American Board of Endodontics*, the Sixth Circuit interpreted the phrase "the transaction of any business within the state" to mean that "if defendant conducted even the slightest act of business in Michigan, the first statutory criterion for personal jurisdiction . . . is satisfied." 843 F.2d 901, 906 (6th Cir. 1988). Bogdanov transacted business in the state of Michigan by traveling with Ergashev to Michigan on multiple occasions to provide management services and oversee Ergashev's training in Detroit. (*See* ECF No. 23, PageID.205.) He also negotiated the Agreement with the Michigan office of Salita Promotions. (ECF No. 35-2, PageID.376.)

Alternatively, Bogdanov's conduct could fit within the category of "the doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort" because Salita Promotions has asserted what appears to be a viable tortious interference claim against Bogdanov. (ECF No. 23, PageID.213.)

The second step of Michigan's long-arm analysis requires the Court to consider whether the cause of action against Bogdanov "arises from" Bogdanov's contacts with Michigan. *See Lanier*, 843 F.2d at 909; *Citizens Bank v. Parnes*, 376 F. App'x 496, 501 (6th Cir. 2010). Here, there is a wrinkle. One of the key contacts that Salita Promotions argues in its brief—that the promotional agreement was signed and executed in Michigan—does not appear anywhere in the pleadings or record evidence. (Attorney argument is not evidence.) Although the Agreement contains a Michigan forum selection clause, without the key fact of where it was executed, the Court cannot say the Agreement is a "Michigan contract." And although the complaint alleges that Bogdanov helped negotiate the Agreement, the record does not contain allegations of where those negotiations took place. It is clear that the tortious interference claim against Bogdanov arises from the Agreement. So if the Agreement was negotiated and signed in Michigan, the Court could rule that the claim arises from Bogdanov's contacts with Michigan. But based on the pleadings and record evidence currently before the Court, it cannot say whether Bogdanov's involvement with the Agreement is a Michigan contact.

Since the Court cannot say that the claim against Bogdanov arises from his contacts with Michigan, the Court cannot exercise specific personal jurisdiction over

Bogdanov and he must be dismissed as a defendant. But because it appears that personal jurisdiction over Bogdanov could be established with properly pled facts, Salita Promotions may re-allege its claims against Bogdanov in its second amended complaint if it can allege sufficient jurisdictional facts.

## C. Failure to State a Claim

Defendants also challenge Salita Promotions' claims under Rule 12(b)(6), arguing they fail to state a claim upon which relief can be granted.

### 1. Count I: Breach of Contract

Defendants first argue that the breach-of-contract claim against Ergashev must be dismissed because the Agreement is illegal under the Muhammad Ali Boxing Reform Act and is an illusory contract. (ECF No. 30, PageID.258.)

Congress passed the Ali Act in 2000 to "reform unfair and anticompetitive practices in the professional boxing industry." Pub. L. No. 106-210, 114 Stat. 321 (2000). Defendants specifically cite to 15 U.S.C. § 6308, "Conflicts of Interest," which sets up a "firewall" between boxing managers and promoters. In relevant part, this section provides that "[a] promoter cannot have any financial interest in the management of a boxer and a manager cannot have any financial interest in the promotion of a boxer." Devin J. Burstein, Esq., *The Muhammad Ali Boxing Reform Act: Its Problems and Remedies, Including the Possibility of A United States Boxing Administration*, 21 Cardozo Arts & Ent. L. J. 433, 455–56 (2003) (citing 15 U.S.C. § 6308).

Defendants argue that the promotional agreement breaches this firewall because it requires Ergashev's manager be approved by Salita Promotions. (*See* ECF No. 35-3, PageID.391 (Section XXIV).) But the text of the statute and the legislative history make clear that the Act is concerned only with a *financial* conflict of interest. *See* S. Rep. No. 106-83, at 11 (1999) (discussing the issue of a manager being on the payroll of a promoter or being given "financial inducements" by promoters). Requiring Salita Promotions' approval of any new manager does not give the company a financial interest in Ergashev's management. Salita Promotions (and the text of the Agreement itself) explains that the reason for this requirement is that the successful promotion of a boxer requires a good working relationship between a boxer's promoter and manager. (ECF No. 35, PageID.358; ECF No. 35-3, PageID.301 (Section XXIV of Agreement).) The general provision in the Agreement requiring Salita Promotions' approval of a new manager does not violate the Ali Act.

Additionally, in this case, Ergashev has maintained the same manager (Bogdanov) since he signed the Agreement and so this manager-approval requirement has never been put into effect. In theory, there could be an issue if Ergashev was seeking a new manager and Salita Promotions denied permission for every manager that Ergashev proposed such that Ergashev was forced to select someone that was financially connected to Salita Promotions or otherwise created a conflict of interest. But courts do not decide hypotheticals. And Defendants do not argue that there is an actual conflict of interest between Salita Promotions and

Bogdanov or that Salita Promotions has ever attempted to enforce the manager-approval clause.

Defendants also suggest that the "Purse Bids" section of the Agreement, which requires Ergashev to pay Salita Promotions 25 percent of his purse if another promoter wins the bid to promote Ergashev in a bout (ECF No. 35-3, PageID.190 (Section XXI)), violates the Ali Act. This is so, say Defendants, because "a promoter is only allowed to pay a boxer the contracted purse to fight; the promoter cannot take money from a boxer." (ECF No. 30, PageID.260–261.)

But that is not what the Act says. As discussed above, § 6308 only prohibits a financial conflict of interest between a boxer's manager and promoter. Requiring that Ergashev pay Salita Promotions a percentage of his earnings for a fight the company does not promote does not give Salita Promotions a financial interest in Ergashev's management, or vice versa. Rather, the 25 percent is in consideration of Salita's overall promotional efforts, even if it did not promote a particular fight.

Defendants have not pointed to any evidence that the promotional agreement violates the Ali Act so the motion to dismiss on that ground is denied.

Defendants also allege that the promotional agreement is not enforceable because it is an illusory contract. "An illusory contract is defined as an agreement in which one party gives as consideration a promise that is so insubstantial as to impose no obligation. The insubstantial promise renders the agreement unenforceable." *Cincinnati Ins. Co. v. Hall*, No. 308002, 2013 WL 3107640, at *5 (Mich. Ct. App. June 20, 2013) (internal quotation marks omitted). Defendants argue that the Agreement

is illusory because (1) Salita Promotions can unilaterally alter the purse minimums if they are commercially unreasonable and (2) Salita Promotions has the right to terminate the Agreement if Ergashev loses a bout. (ECF No. 30, PageID.263–264.) Defendants argue why they think these unilateral provisions are *unfair* but provide no legal citations to support their positions that these provisions make the contract *illusory*.

The key feature of an illusory contract is that there is no mutuality of obligation. But here both parties are obligated. As Salita Promotions points out, "[Salita Promotions] must offer a minimum number of bouts for Ergashev each year and for each bout [it] is obligated to pay Ergashev a 'purse' pursuant to the terms of [the Agreement]." (ECF No. 35, PageID.363.) Although it is true that "a contract that is cancellable at will by one party can create an illusory obligation, a right to amend does not render an agreement illusory when restrictions are placed on that right." *Tobel v. AXA Equitable Live Ins. Co.*, No. 298129, 2012 WL 555801, at *4 (Mich. Ct. App. Feb. 21, 2012) (internal citation omitted). Section XIII of the Agreement limits Salita Promotions' right to terminate the contract in two ways: (1) the right can be invoked only if Ergashev loses a bout and (2) Salita Promotions must provide notice to Ergashev before terminating the agreement. (ECF No. 23-1, PageID.223.) *See, e.g.*, *Eichinger v. Kelsey-Hayes Co.*, No. 09-14092, 2010 WL 2720931, at *7 (E.D. Mich. July 8, 2010) (holding that an arbitration agreement that could be unilaterally modified, terminated, or suspended was not illusory because defendant could only do so after 10 days' notice and changes would not apply to pending claims); *Tobel*, 2012

WL 555801, at *6 ("Here, in addition to the fact that Baird provided consideration for the Cash Account Agreements through its agreement to open and manage the accounts, Baird's right to amend was subject to it providing specified notice of its intent to amend.").

Moreover, even if a contract could be considered illusory at its inception "the parties' performances under the agreement[] preclude any claim that the agreement[] should be found unenforceable." *Tobel*, 2012 WL 555801, at *6. In this case, the parties have been performing under the terms of the Agreement for years. As Salita Promotions points out: "Since the inception of the Agreement, Ergashev received eight purses for eight bouts arranged by Plaintiff." (ECF No. 35, PageID.363.) Ergashev cannot now claim the agreement is illusory after receiving the benefit of the Agreement.

## 2. Count III: Accounting

Defendants argue that Salita Promotions' accounting cause of action should be dismissed because Salita Promotions has not pled the facts necessary to justify this "extraordinary equitable remedy [that] is only available when legal remedies are inadequate." *McDonald v. Green Tree Servicing, LLC,* No. 13–12993, 2014 WL 1260708, at *8 (E.D. Mich. Mar. 27, 2014) (citing *Bradshaw v. Thompson*, 454 F.2d 75, 79 (6th Cir. 1972)). Salita Promotions responds that its accounting claim is viable because it lacks information necessary to calculate its damages.

But just because Salita Promotions does not currently have the information necessary to calculate its damages does not entitle it to an accounting claim. "An

19

accounting is unnecessary where discovery is sufficient to determine the amounts at issue." *Boyd v. Nelson Credit Centers, Inc.*, 348 N.W.2d 25, 27 (Mich. Ct. App. 1984). Salita Promotions alleges that Defendants have in their exclusive possession the financial information necessary to compute damages. (ECF No. 35, PageID.370.) The Court will permit Salita Promotions to obtain this relevant and proportional information through traditional discovery. So there is no need for a free-standing accounting claim. The accounting cause of action is dismissed.

### 3. Count IV: Injunctive Relief

Finally, Defendants argue that Salita Promotions' cause of action for injunctive relief must be dismissed because "an injunction is a remedy, not an independent cause of action." (ECF No. 30, PageID.268 (quoting *Redmond v. Heller*, No. 347505, 2020 WL 2781719, at *5 (Mich. Ct. App. May 28, 2020).) Although Salita Promotions improperly listed "injunctive relief" as a cause of action, it also included its request for a permanent injunction in its demand for relief. (ECF No. 23, PageID.215–216.) And the Court has already granted injunctive relief in this case based on Salita Promotions' motion for a preliminary injunction. (*See* ECF No. 17.) So the Court will simply construe Salita Promotions' request for injunctive relief as a remedy rather than an independent cause of action. To prevent any further confusion, in its second amended complaint Salita Promotions should include injunctive relief only as a remedy and not an independent cause of action.

## IV. Conclusion

Defendants' motion to dismiss (ECF No. 30) is GRANTED IN PART and DENIED IN PART as follows. The Court has subject-matter jurisdiction over the case and can exercise general personal jurisdiction over the claims against Ergashev. But because the operative complaint does not adequately allege a factual basis for exercising personal jurisdiction over the claims against Bogdanov, he is dismissed without prejudice to Salita Promotions re-alleging the claims against him in a second amended complaint. Salita Promotions is also ordered to properly state the citizenship of the defendants and include injunctive relief only as a remedy in its second amended complaint.

The accounting cause of action (Count III) is dismissed without prejudice. The remaining portions of Defendants' motion to dismiss are DENIED.

IT IS FURTHER ORDERED that Salita Promotions must file its second amended complaint on or before August 24, 2021.

SO ORDERED.

Dated: August 10, 2021

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE